UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAVID H. STENMARK,<br>Plaintiff<br><br>v.<br><br>BANK OF AMERICA CORPORATION, as successor and assignee of FLEETBOSTON FINANCIAL CORPORATION, SEPARATION PAY AND BENEFITS PLAN OF FLEETBOSTON FINANCIAL CORPORATION AND PARTICIPATING SUBSIDIARIES, and MAURO A. CIERI, in his capacity as Plan Administrator,<br>Defendants. | : | C.A. No. 05-312ML |

**DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

Pursuant to F.R. Civ. P. 26(c), defendants Bank of America, N.A. (improperly named in the Complaint as "Bank of America Corporation," and hereinafter referenced as "BAC"), the Separation Pay and Benefits Plan of FleetBoston Financial Corporation and Participating Subsidiaries as Amended and Restated (improperly named in the Complaint as "Separation Pay and Benefits Plan of FleetBoston Financial Corporation and Participating Subsidiaries," and hereinafter referenced as the "Plan") and Mauro A. Cieri ("Cieri") hereby move for a protective order quashing the discovery requests Plaintiff has served in this case to the extent that those requests seek documents or information other than what is contained in the administrative record.

In support of this motion, the Court is respectfully referred to the accompany memorandum and exhibits.

BANK OF AMERICA, N.A., SEPARATION PAY AND BENEFITS PLAN OF FLEETBOSTON FINANCIAL CORPORATION AND PARTICIPATING SUBSIDIARIES AS AMENDED AND RESTATED, and MAURO A. CIERI

By their Attorneys,

Mark A. Pogue (#3341)
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200

Dated: March 9, 2006

**CERTIFICATE OF SERVICE**

I hereby that on the 9th day of March 2006, I caused a true copy of the within Defendants' Motion For A Protective Order to be mailed to the following:

Richard A. Sinapi, Esquire
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAVID H. STENMARK,<br>Plaintiff<br><br>v.<br><br>BANK OF AMERICA CORPORATION, as successor and assignee of FLEETBOSTON FINANCIAL CORPORATION, SEPARATION PAY AND BENEFITS PLAN OF FLEETBOSTON FINANCIAL CORPORATION AND PARTICIPATING SUBSIDIARIES, and MAURO A. CIERI, in his capacity as Plan Administrator,<br>Defendants. | : | C.A. No. 05-312ML |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

Defendants Bank of America, N.A. (improperly named in the Complaint as "Bank of America Corporation," and hereinafter referenced as "BAC"), the Separation Pay and Benefits Plan of FleetBoston Financial Corporation and Participating Subsidiaries as Amended and Restated (improperly named in the Complaint as "Separation Pay and Benefits Plan of FleetBoston Financial Corporation and Participating Subsidiaries," and hereinafter referenced as the "Plan") and Mauro A. Cieri ("Cieri") hereby submit this Memorandum in support of their motion for a protective order. As shown below, defendants' motion should be granted, and the Court should issue a protective order quashing the discovery plaintiff has served to the extent that it seeks documents or information other than what is contained in the administrative record.

# I. FACTUAL BACKGROUND

## A. Plaintiff's Employment History

Before his Senior Project Manager position was eliminated on June 1, 2004, Plaintiff was employed by FleetBoston Financial Corporation ("Fleet") and/or its predecessors. See Complaint at ¶¶ 9-10. Plaintiff's former job duties were transferred to Trammell Crow Corporation ("TCC") following the merger of BAC and Fleet. Complaint at ¶ 19. Before the transfer of his duties was effective, TCC interviewed Plaintiff for a position upon his termination from Fleet. Id. In May 2004, TCC offered Plaintiff the position of Project Manager, at the same salary and with equivalent benefits as he enjoyed with Fleet. Plaintiff accepted this position and, upon information and belief, began working at TCC immediately after his termination from Fleet. Id. at ¶ 21.

## B. The Plan

### 1. Benefits Available to Eligible Employees

The Plan is an employee benefits plan within the meaning of ERISA. Id. at ¶ 4. Its stated purpose is "to provide transitional pay and benefits for a limited period of time to certain terminated employees." See Plan at 1.[1] While the initial version of the Plan became effective on June 14, 1989, the Plan as restated and amended on March 29, 2004 governs all claims and interpretations made after the effective date of the Fleet/BAC merger, April 1, 2004. Id. at 1, 17. Under the Plan, eligible employees are entitled to up to 61 weeks of severance payments at the conclusion of their employment with Fleet. Id. at 6-7.

To be eligible, an employee must, (among other things) be severed from service as the result of a "Covered Termination." Id. at 6. While company-initiated dismissals for job elimination generally qualify as a Covered Termination, the Plan excludes from the definition

[1] A copy of the Plan is attached as Exhibit A hereto.

employees who are either offered a "Comparable Job" or accept a "Non-comparable Job." Id. at 2-3. A "Comparable Job" is defined as a job that:

- has Base Pay no less than the Employee's current position;
- has no significant change in work schedule;
- requires a reasonably similar employment background and skill set as the Employee's current job; and
- for Non-Exempt Employees, is no farther than 30 miles from the Employee's home to the new work location or than the Employee's current commute, whichever is greater; for Exempt Employees, is no farther than 40 miles from the Employee's home to the new work location or than the Employee's current commute, whichever is greater.

Id. at 2. The Comparable Job exclusion specifically applies to positions offered by a third party as the result of outsourcing.[2] Id. at 5.

### 2. **The Plan Administrator's Broad Discretion**

The Plan delegates all administrative duties to a Plan Administrator. See Plan at 11-12. Following the BAC/Fleet merger, the Plan identifies the Bank of America Corporation Corporate Benefits Committee as the Plan Administrator. Id. at 11. The Plan Administrator is empowered to designate its powers and responsibilities to others. Id. at 12. In keeping with this authority, the Plan defines "Plan Administrator" as Defendant Cieri. Id. at 1. The Plan further provides that:

[2] The Covered Termination definition contemplates that Comparable Jobs must be as the result of a "Transaction," which is defined to include "any outsourcing or related arrangement of a business, division or operating unit of the Company." See id. at 3, 5.

> The Plan Administrator and/or its Designee **shall have such discretionary powers as are necessary** to discharge his, her or its duties, including but not limited to, **discretionary interpretation and construction of the Plan**, and the **determination of all questions of eligibility**, participation and benefits and all other related or incidental matters. The Plan Administrator's (and/or its Designee's) decision will be binding on the participant, the participant's spouse or other dependent or beneficiary and all other interested parties, **subject to review or correction only to the extend that such a decision, determination or construction is shown by clear and convincing evidence to be arbitrary and capricious**.

Id. at 12 (emphasis added).

### C. Plaintiff's Claim For Benefits

Despite the fact that Plaintiff suffered no break in service or loss of compensation as a result of his discharge from Fleet, he submitted a claim for sixty-one (61) weeks of severance pay – more than $100,000. See Complaint at ¶¶ 11, 22, 53. Plaintiff based his claim on his belief that the Project Manager position he accepted with TCC was not a Comparable Job under the Plan.

By a letter dated January 11, 2005, BAC denied Plaintiff's claim for severance benefits. Acting on behalf of the Plan Administrator, BAC representative Holly Stephens stated in the letter that Plaintiff was ineligible for severance benefits because he was offered a Comparable Position with TCC. Ms. Stephens further stated that, even if the TCC position were not a Comparable Position, then Plaintiff's acceptance of the Non-Comparable Position would also disqualify him from receiving severance.

Plaintiff appealed this initial determination by a letter dated February 9, 2005. In response, Defendant Cieri personally considered Plaintiff's claim, including the record developed in the course of evaluating that claim (the "Administrative Record"). By letter dated March 3, 2005, Defendant Cieri denied Plaintiff's appeal.

## II. PROCEDURAL POSTURE

Plaintiff filed this action following Defendant Cieri's denial of Plaintiff's administrative appeal. The complaint contains four claims of ERISA violations and two common law claims. Throughout the litigation, Defendants have maintained that, because this is an ERISA case, discovery beyond the Administrative Record is impermissible. Nevertheless on January 13, 2006, Plaintiff served each of the three Defendants with thirty-five (35) requests for production and the maximum of twenty-five (25) interrogatories (the "Discovery Requests").[3]

## III. ARGUMENT

### Defendants Are Entitled To A Protective Order Quashing The Discovery Requests Because They Seek Information Beyond The Administrative Record

The Court should issue a protective order quashing the Discovery Requests because they seek information beyond the Administrative Record in this case. Defendants are certainly willing to produce the Administrative Record, but they are not required to produce anything else.

F.R. Civ. P. 26(c) authorizes the Court, "for good cause shown," to issue a protective order barring or limiting discovery. Because Plaintiff is suing under ERISA, the "good cause" requirement must be viewed in light of applicable evidentiary restrictions under ERISA. See Liston v. Unum Corp. Ofr. Severance Plan, 330 F.3d 19, 26 (1st Cir. 2003). As stated by the United States Supreme Court in Oppenheimer Fund, Inc. v. Sanders, "discovery, like all matters of procedure, has ultimate and necessary boundaries." 437 U.S. 340, 351-52, 98 S. Ct. 2380, 2389-90 (1978) ("[d]iscovery of matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)"). The authority to limit discovery is within the Court's broad discretion. See, e.g., Santiago v. Fenton, 891 F.2d 373, 379 (1st Cir. 1989).

---

[3] Copies of the Discovery Requests are attached hereto as Exhibit B. Plaintiff's counsel graciously agreed to extend the time for Defendants to respond to the Discovery Requests.

As noted, the Plan grants the Plan Administrator complete discretion to determine a claimant's eligibility for benefits. Given this broad grant of discretion, the Plan Administrator's denial of Plaintiff's claim for benefits must be reviewed under the arbitrary and capricious standard. See Firestone Tire & Rubber Company v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000).

Under the arbitrary and capricious standard, a court may overturn a decision of a plan administrator only if it is "'without reason, unsupported by the evidence or erroneous as a matter of law.'" Greene v. Met. Life Ins. Co., 924 F.Supp. 351, 357 (D.R.I. 1996) (quoting Abnathya v. Hoffman, 2 F.3d 40, 45 (3d Cir. 1993)). In order to find that an administrator had abused its discretion, a court would have to find that the administrator's eligibility determination was "unreasonable in light of the information available to it." Pari-Fasano, 230 F.3d at 419. To determine whether the plaintiff has carried this burden, the court must look to the record as a whole. Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002). Under the arbitrary and capricious standard of review, the "whole" record consists only of that evidence that was before the administrator when it made the decision being reviewed. Id. "The whole record is at the time of final denial." Carney v. Int'l Brotherhood of Elec. Workers, 2001 WL 1243581, at *2 (E.D.Pa. Oct. 17, 2001).

The First Circuit has made clear that the record on review is limited to the record before the administrator. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005); Liston, 330 F.3d at 23. As the Orndorf court observed:

> The decision to which judicial review is addressed is the final ERISA administrative decision. It would offend interests in finality and exhaustion of administrative procedures required by ERISA to shift the focus from that decision

> to a moving target by presenting extra-administrative record evidence going to the substance of the decision.

404 F.3d at 519.

This Court applies the same rule. "[W]here an ERISA plan confers discretionary authority upon the administrator to determine eligibility for benefits or to construe the terms of the plan, then the district court is to apply the arbitrary and capricious standard of review to the administrator's factual determinations." Grady v. Paul Revere Life Ins. Co., 10 F.Supp. 2d 100, 110 (D.R.I. 1998) (Lagueux, J.). And when the deferential arbitrary and capricious standard of review is used, judicial review of the administrator's actions is limited to the "record before the administrator." Id.

Information that was not before the administrator when it made the benefits decision at issue is beyond the scope of the administrative record. See, e.g., Liston, 330 F.3d at 23. That is because information not before the plan administrator (obviously) could not have been considered in evaluating the merits of a claim. See id. (asking "how could an administrator act unreasonably by ignoring information never presented to it?"). Allowing the record before the Court to be expanded beyond the Administrative Record would, in effect, permit the Court to review the case on a *de novo* basis and impermissibly substitute its judgment for that of the Plan Administrator.[4] Such a review would necessarily collide with the requirement that the Court evaluate the Plan Administrator's decision under the arbitrary and capricious standard of review.

In Liston v. Unum Corp. Ofr. Severance Plan, the Court affirmed the District Court's denial of discovery in an ERISA severance plan claim. 330 F.3d at 26. There, as here, the plaintiff claimed that she was entitled to severance payments after her job duties allegedly

[4] Even where a *de novo* standard of review applies, the First Circuit has indicated that discovery in ERISA cases is limited to the administrative record. See Orndorf, 404 F.3d at 520 (holding that Liston's limitation of the record on review "is true as to discovery as well, **regardless of whether the standard of review is de novo or deferential**.") (emphasis added).

changed following a merger between her employer and another company. Id. at 21. The plaintiff attempted to obtain discovery as to how other employees were treated by the plan. Id. Both the plan administrator and the District Court rejected plaintiff's attempts at discovery. Id. at 21-22, 25. In affirming the discovery prohibition, the First Circuit emphasized that the only evidence that mattered was that which related to the plan's denial of benefits *to the plaintiff* – not other employees. Simply stated, it was irrelevant whether other employees were treated more favorably than the plaintiff with respect to benefits determinations. See id. at 25-26.

Here, the voluminous Discovery Requests served by Plaintiff seek information and documents far beyond the scope of the Administrative Record. For the reasons given above, this extra-record material is not relevant to the question whether the Plan Administrator was arbitrary and capricious in interpreting the terms of the Plan. See, e.g., Ordorf, 404 F.3d at 519-20; Liston, 330 F.3d at 23; Leahy, 315 F.3d at 17, Grady, 10 F.Supp. 23 at 110.[5] Defendants are therefore entitled to a protective order quashing the discovery requests to the extent that they seek information or documents outside the Administrative Record.[6]

---

[5] Much of the information Plaintiff seeks in the Discovery Requests is precisely the sort of information which the Liston court held exempt from discovery. See 330 F.3d at 25-26.

[6] The fact that Plaintiff has included two common law counts in his lawsuit does not permit him to circumvent the rule limiting discovery in ERISA cases to the Administrative Record. Plaintiff's common law counts are improper because they are preempted by his ERISA claims. Simultaneously with the filing of this motion, Defendants are filing a motion to dismiss the common law claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

Respectfully submitted,

Defendants,

BANK OF AMERICA, N.A.,
SEPARATION PAY AND BENEFITS PLAN OF FLEETBOSTON FINANCIAL CORPORATION AND PARTICIPATING SUBSIDIARIES AS AMENDED AND RESTATED, and MAURO A. CIERI

by

Mark A. Pogue (#3341)
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200

Dated: March 9, 2006

**CERTIFICATE OF SERVICE**

I hereby that on the 9th day of March 2006, I caused a true copy of the within Defendants' Answer and Defenses to be mailed to the following:

Richard A. Sinapi, Esquire
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920

Mark A. Pogue