# SEPARATION PAY AND BENEFITS PLAN OF FLEETBOSTON FINANCIAL CORPORATION AND PARTICIPATING SUBSIDIARIES AS AMENDED AND RESTATED

## PART I PURPOSE

This document sets forth the FleetBoston Financial Corporation Separation Pay and Benefits Plan, as amended and restated (the "Plan"), which has been established under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This restatement of the Plan is intended to formalize the Company's separation pay and benefits policy. The purpose of the Plan is to provide transitional pay and benefits for a limited period of time to certain terminated Employees. This restatement is designed to be both the summary plan description and the governing plan document.

The original Plan was in effect for eligible Employees effective June 14, 1989. This restatement shall be effective for all claims and interpretations made under the Plan on and after the date on which the transactions contemplated by the Agreement and Plan of Merger by and between the Company and Bank of America Corporation, dated as of October 27, 2003 are consummated (the "Effective Date"). Except as otherwise set forth in the Plan, the Company reserves the right to amend or terminate the Plan by a written restatement signed by a duly authorized officer of the Company and otherwise in accordance with the amendment and termination provisions set forth in the Plan. No vested rights are provided under the Plan.

From and after the Effective Date, reference to FleetBoston Financial Corporation and the Participating Employers shall refer to Bank of America Corporation and the other corresponding successor legal entities.

## PART II DEFINITIONS

For purposes of the Plan, the following terms are defined as set forth below:

Administrator or Plan Administrator means, prior to the Effective Date, the Director of HR Delivery Services. From and after the Effective Date, Administrator or Plan Administrator means Mauro A. Cieri unless another person is designated by the Corporate Personnel Executive of Bank of America Corporation.

Base Pay means (1) for Exempt Employees and full-time Non-Exempt Employees, the current regular annual base salary, as recorded on the Human Resources system, and (2) for Part-time Non-Exempt Employees, the current regular hourly rate of pay, as recorded on the Human Resources system. Base Pay excludes extra pay such as overtime, shift differential, incentive compensation in any form, commissions (except as provided in the following sentence), premiums, bonuses, and travel, living or other allowances. For Employees whose compensation is based on commissions only (no base salary or hourly pay, e.g., mortgage originators), the Base Pay shall be the base benefit rate on the Human Resources system as

determined by the Company in its sole discretion.

Change in Control has the meaning set forth in the FleetBoston Financial Corporation 1996 Long Term Incentive Plan, as amended, as in effect immediately prior to the Effective Date.

Code means the Internal Revenue Code of 1986, as amended, and the regulations thereunder.

Company means FleetBoston Financial Corporation and the Participating Subsidiaries, but does not include the Non-Participating Subsidiaries.

Comparable Job means a job that:

- has Base Pay no less than the Employee's current position;
- has no significant change in work schedule;
- requires a reasonably similar employment background and skill set as the Employee's current job; and
- for Non-Exempt Employees, is no farther than 30 miles from the Employee's home to the new work location or than the Employee's current commute, whichever is greater; for Exempt Employees, is no farther than 40 miles from the Employee's home to the new work location or than the Employee's current commute, whichever is greater.

COBRA means the healthcare continuation coverage mandated by Consolidated Omnibus Budget Reconciliation Act and the regulations thereunder.

Covered Termination means any one of the following: (1) a Company-initiated dismissal of an Employee as a result of a work force reduction or job elimination; (2) an Employee-initiated termination as a result of an Employee not being offered (or not continuing to be employed in) a Comparable Job; or (3) an Employee is offered a Comparable Job as part of or arising from a Transaction or accepts a Non-Comparable Job as part of or arising from a Transaction that, in either case, does not include (a) credit for benefit plan purposes by the employer in connection with a Transaction for past service with the Company and its predecessors, as determined in the sole discretion of the Plan Administrator; (b) reasonable benefits, as determined in the sole discretion of the Plan Administrator; (c) reasonable severance benefits, as determined in the sole discretion of the Plan Administrator, for two (2) years following the Effective Date; and (d) similar severance pay, as determined in the sole discretion of the Plan Administrator, for two (2) years following the Effective Date. In the case of (1), (2) or (3), above, in order to be a Covered Termination, the situation must otherwise satisfy the conditions under this Plan for the receipt of separation pay and benefits hereunder.

A Covered Termination does not include a termination under any of the following circumstances:

- any voluntary (i.e., Employee-initiated) termination (other than a termination as a result of an Employee not being offered (or not continuing to be employed in) a Comparable Job);

- any termination for "cause," as determined by the Company, which shall be reasonably determined by the Company consistent with FleetBoston's past practice as in effect immediately prior to the Effective Date;

- any termination by reason of an Employee's death or Disability;

- an Employee is offered a Comparable Job as part of or arising from a Transaction that includes (a) credit for benefit plan purposes by the employer in connection with a Transaction for past service with the Company and its predecessors, as determined in the sole discretion of the Plan Administrator; (b) reasonable benefits, as determined in the sole discretion of the Plan Administrator; (c) reasonable severance benefits, as determined in the sole discretion of the Plan Administrator, for two (2) years following the Effective Date; and (d) similar severance pay, as determined in the sole discretion of the Plan Administrator, for two (2) years following the Effective Date.

- an Employee is offered and accepts a Non-Comparable Job as part of or arising from a Transaction that includes (a) credit for benefit plan purposes by the employer in connection with a Transaction for past service with the Company and its predecessors, as determined in the sole discretion of the Plan Administrator; (b) reasonable benefits, as determined in the sole discretion of the Plan Administrator; (c) reasonable severance benefits, as determined in the sole discretion of the Plan Administrator, for two (2) years following the Effective Date; and (d) similar severance pay, as determined in the sole discretion of the Plan Administrator, for two (2) years following the Effective Date.

- any termination of employment that does not meet all the requirements under the Plan for the receipt of benefits.

An Employee will <u>not</u> have incurred a Covered Termination if he or she accepts a position with the Company or any of its Subsidiaries. An Employee will be deemed to have continued employment in a Comparable Job if the Employee continues in the employ of the Company or one of its Subsidiaries for more than 90 days after he or she has knowledge of the occurrence of an event that results in his or her job no longer being a Comparable Job, and provided the Employee has not previously notified the Company of such event.

<u>Disability</u> means "disability" within the meaning of the Company's long-term disability plan applicable to the Employee.

<u>Employee</u> means any regular active domestic employee of FleetBoston Financial Corporation or any of its Subsidiaries (as in existence immediately prior to the Effective Date), including full-time and Part-time staff, and shall not include individuals who immediately prior to the Effective Date were employed by Bank of America Corporation or any of its subsidiaries.

"Employee" includes those employees who are on leave due to an approved Family and Medical Leave Act leave, an approved workers' compensation leave, jury duty or active military service.

"Employee" does not include the following:

- contract, temporary or seasonal employees;
- persons serving the Company or any of its Subsidiaries under a lease or any leasing arrangement or through an employment agency (other than a Cendant leased employee);
- employees of any Non-Participating Subsidiary of the Company;
- employees who are on leave for any reason other than an approved Family and Medical Leave Act leave, an approved workers' compensation leave, jury duty or active military service;
- employees who have been notified that their job is no longer protected under the Family Medical Leave Act;
- any employee who is a party to an employment or letter agreement with the Company that becomes effective upon a Change in Control; and
- any other employees designated from time to time by the Company, in its sole discretion, as ineligible to participate in the Plan as set forth on Exhibit A hereto, which Exhibit A may not be amended to include additional FleetBoston employees during the two-year period following the Effective Date.

Exempt Employee means any Employee who as of the Separation Date is exempt from the overtime pay requirement defined by the Fair Labor Standards Act (29 U.S.C. § 201 et seq.).

Non-Comparable Job is a job that does not meet all of the criteria of a Comparable Job.

Non-Exempt Employee means any Employee who is not an Exempt Employee as of the Employee's Separation Date.

Non-Participating Subsidiaries means those Subsidiaries of the Company set forth on Exhibit A hereto, the employees of which are not eligible to participate in or receive any benefits under this Plan, which Exhibit A may not be amended to include additional Subsidiaries of FleetBoston during the two-year period following the Effective Date.

Participating Subsidiary means a Subsidiary of the Company, other than the Non-Participating Subsidiaries.

Part-time Employee means an Employee who is scheduled to work less than 40 hours per week as of immediately prior to the Employee's Separation Date (or as of the date of a significant change in work schedule, if that is the event giving rise to the claim for separation pay and benefits hereunder).

Plan Sponsor means FleetBoston Financial Corporation.

Separation Date means an Employee's last day of active employment (or last day of an approved Family and Medical Leave Act leave, an approved workers' compensation leave, jury duty or active military service) as designated by the Company.

Subsidiary means a corporation, company, partnership or other business entity 50% or more of the voting stock (or of any other form of other voting or controlling equity interest in the case of a business entity that is not a corporation) of which is beneficially owned by the Company directly or indirectly through one or more other business entities.

Transaction means any of the following occurring after the Effective Date pursuant to an agreement or arrangement negotiated by the Company with a third party: (1) the sale or exchange of any stock or assets of a business, division or operating unit of the Company, (2) the transfer to a third party of any business, division or operating unit of the Company, (3) the creation of, or contribution to, a joint venture or other business relationship of any stock or assets of a business, division or operating unit of the Company, (4) any outsourcing or related arrangement of a business, division or operating unit of the Company or (5) any other business transaction with respect to a business, division or operating unit of the Company relating to or similar to the foregoing without regard to the form of the transaction.

WARN Act means the Worker Adjustment and Retraining Notification Act of 1988 set forth at 29 U.S.C. § 2101 et seq. or any similar state or local statute to the extent not preempted by ERISA.

Week's Salary means (1) for Exempt Employees and full-time Non-Exempt Employees, the weekly rate of Base Pay, determined by dividing his or her annualized Base Pay as of his or her Separation Date by 52; and (2) for Part-time Non-Exempt Employees, the weekly rate of Base Pay based on the Employee's regular weekly schedule of hours as of his or her Separation Date as recorded on the Company's Human Resources System; provided, that, in connection with a termination during the two-year period following the Effective Date, and in the event that an Employee's Base Pay is lower on the Employee's Separation Date than it was immediately prior to the Effective Date, and further in response to the Employee's request, the Plan Administrator shall have discretion to use the Employee's Base Pay immediately prior to the Effective Date, as appropriate, for purposes of calculating the Employee's Week's Salary. For Employees whose compensation is based on commissions only (no base salary or hourly pay, e.g., mortgage originators), the Base Pay for purposes of determining a Week's Salary shall be the base benefit rate on the Human Resources system as determined by the Company in its sole discretion.

Year of Service means each continuous full year (365 days) of completed service for the Company. Partial Years of Service will be determined in one-month increments and credited to Employees as they complete each month of continuous service during a partial Year of Service. For Employees with an adjusted date of hire, including Employees who have an adjusted date of hire as a result of joining the Company through an acquisition, the adjusted hire date for purposes of determining an Employee's vacation benefits will be used in calculating Years of Service.

## PART III ELIGIBILITY

An Employee shall, upon a Covered Termination, be eligible at his or her Separation Date for separation pay and benefits as determined under Part IV, provided that each of the following criteria is then satisfied:

1. He or she is an Employee on the Separation Date. An Employee who leaves the Company for any reason (other than due to death or Disability) before the Separation Date is considered to have voluntarily terminated employment and, therefore, is not eligible to receive any separation pay or benefits under this Plan.

2. His or her separation from service occurs as a result of a Covered Termination.

3. He or she does not refuse an offer of employment by the Company which, in the sole judgment of the Company, is for a Comparable Job.

4. He or she executes (and does not revoke), in a form that is satisfactory to the Company, such documents as the Company may require, which shall include a separation agreement that contains an effective general release of all known and unknown claims against the Company in a form consistent with FleetBoston's past practice as in effect immediately prior to the Effective Date), and may include provisions binding the Employee to confidentiality, cooperation with litigation, non-disparagement and/or non-solicitation agreements.

## PART IV SEPARATION PAY AND BENEFITS

Separation Pay

Separation pay will be determined as follows:

1. Non-Exempt Employees (as of the Employee's Separation Date). Two Weeks' Salary per Year of Service, with a minimum of 8 Weeks' Salary paid, not to exceed 39 Weeks' Salary in total.

2. Exempt Employees with annualized Base Pay of less than $75,000 (as of the Employee's Separation Date). Two Weeks' Salary per Year of Service, with a minimum of 8 Weeks' Salary paid, not to exceed 39 Weeks' Salary in total.

3. Exempt Employees with annualized Base Pay of $75,000 and more (as of the Employee's Separation Date). Four Weeks' Salary per Year of Service, with a minimum of 8 Weeks' Salary paid, not to exceed 52 Weeks' Salary in total.

4. Change in Control Enhancement. In the event of a Covered Termination within two years following the Effective Date, a severance enhancement equal to nine Weeks' Salary shall be added to the separation pay determined under clauses 1, 2 or 3 above. As such, the maximum number of Weeks' Salary payable as set forth in clauses 1, 2 and 3 above shall each be increased by nine, so that 39 becomes 48 in clauses 1 and 2 and 52 becomes 61 in clause 3, and the minimum number of

Weeks' Salary payable as set forth in clauses 1, 2, and 3 above shall each be increased by nine, so that 8 becomes 17 in clauses 1, 2 and 3.

To determine a Part-Time Exempt Employee's annualized Base Pay for purposes of determining the Part-Time Employee's eligibility for the level (number of Weeks' Salary) of separation pay under clauses 2 and 3 above only, the Company shall divide the Part-Time Employee's Week's Salary by the Part-Time Employee's regular weekly schedule of hours as of his or her Separation Date as recorded on the Company's Human Resources system and multiply that number by 2080 (40 x 52). For Part-time Exempt Employees whose compensation is based on commissions only (no base salary or hourly rate), the base benefit rate as outlined under the definition of "Base Pay" will be used in the determination of the level of separation pay under clauses 2 and 3 above.

In the event an Employee is subject to an involuntary reclassification (from Exempt to Non-Exempt, or Non-Exempt to Exempt) in the two-year period immediately following the Effective Date, the Employee shall receive the greater level (number of Weeks' Salary) of separation pay between (a) the level based upon the Employee's classification immediately prior to the Effective Date; or (b) the level based upon the Employee's classification as of his or her Separation Date.

Job Transition Support

In addition to providing separation pay and benefits, as described above, the Company shall provide job transition support, including outplacement services, in accordance with FleetBoston's past practice as in effect immediately prior to the Effective Date, the material terms of which are set forth on Exhibit B attached hereto. In the event an Employee is subject to an involuntary reclassification (from Exempt to Non-Exempt, or Non-Exempt to Exempt) in the two-year period following the Effective Date, the Employee shall receive the greater level of job transition support between (a) the level of support based upon the Employee's classification immediately prior to the Effective Date; or (b) the level of support based upon the Employee's classification as of his or her Separation Date. Job transition support services shall be coordinated by the Corporate Human Resources Department.

Vacation Pay

No vacation pay will be accrued after the Separation Date, except as may be required under the WARN Act.

Administrative Procedure For Separation Pay and Benefits

Subject to the effectiveness of and the expiration of the revocation period in the separation agreement required by clause 4 of Part III of the Plan, eligible Employees may elect to receive separation pay as salary continuation in accordance with the Company's regular payroll practices or in a single lump-sum payment.

*Lump-Sum Payment*

If an eligible Employee chooses the lump-sum option, all separation pay will be provided in a lump sum by check. All current benefits, including medical, dental, life insurance coverage, and disability benefits and insurance coverage, including but not limited to personal accident insurance and business travel accident insurance, will terminate as of the Separation Date (or on the last day of the month in which the Separation Date occurs, to the extent provided under the applicable plan), except for the continuation of healthcare benefits in accordance with COBRA regulations (at the Employee's expense), conversion options available with certain insurance plans, such as group life or as may be required under the WARN Act. Participation in the Company's qualified and non-qualified defined benefit pension plans (collectively, the "Pension Plan") and the Company's qualified and non-qualified 401(k) savings plans (collectively, the "Saving Plan") will cease as of the Separation Date.

*Salary Continuation*

If an eligible Employee instead chooses to receive his or her separation pay through salary continuation, then under regular payroll procedures, separation pay checks will be issued in accordance with the Company's regular payroll practices and full-time or Part-time benefits, which shall include healthcare and life insurance coverage and participation in the Pension Plan and Savings Plan (to the extent the Employee was eligible to participate in any such plans immediately prior to the Separation Date), but excluding short and long term disability benefits, personal accident insurance, business travel accident insurance and other selected programs and policies consistent with FleetBoston's past practice as in effect immediately prior to the Effective Date, will continue under normal procedures. After payment of all separation pay, all benefits that the Employee had been entitled to receive under this Plan will cease, except through continuation of healthcare benefits in accordance with COBRA (at the Employee's expense) or conversion options available with certain insurance plans, such as group life insurance. Participation in the Pension Plan and Savings Plan will cease effective as of the last day of the separation pay period.

If an Employee's death occurs prior to payment of all separation pay, the Administrator may pay any remaining separation pay to the Employee's estate or to or for the benefit of the spouse or dependent children, and the provision of all benefits shall cease immediately, except as required by COBRA.

<u>Short Notice</u>

To be eligible for benefits under this Plan, an Employee must work or be on an approved Family and Medical Leave Act leave, an approved workers' compensation leave, jury duty leave or active military service leave until his or her Separation Date. If an eligible Employee is given less than two weeks' notice of his or her termination of employment ("Short Notice") and he or she satisfies all requirements for the receipt of benefits under the Plan, he or she will receive additional regular Base Pay equal to the difference between the amount of Short Notice received and two weeks, but under no circumstances will any eligible Employee receive more than two weeks of additional regular Base Pay in the event of such Short Notice.

Offsets

In addition to the reduction of the separation pay and benefits under this Plan as a result of Section 280G of the Code (as provided below), the separation pay and benefits provided under the Plan shall be reduced (but not below zero) by the amount of any severance or separation pay and benefits and/or salary-based guaranteed compensation payments provided for under the terms of any other written employment, change in control, severance, consulting or similar agreement (including an offer letter) to which the Employee and the Company or any of its Subsidiaries are a party or any other severance plan, policy or arrangement in which the Employee participates (a "Severance Arrangement"). Nothing in this Plan shall be construed to provide separation pay or benefits that are duplicative of any separation pay, which shall include the payment of salary-based guaranteed compensation, or benefits provided to an Employee pursuant to any Severance Arrangement. The Company also reserves the right to offset any separation pay or benefits under this Plan by any advances, expenses, loans, claims for damages or other monies the Employee owes the Company or any of its Subsidiaries (except for any personal or business loan for which the Employee may have contracted with the Company or any of its Subsidiaries).

Repayment to the Company Upon Reemployment

If an Employee obtains employment within the Company or any of its Subsidiaries following a Covered Termination and prior to the expiration of the number of weeks of separation pay received, any separation pay and benefits will cease immediately, and any unpaid weeks of separation pay will not be paid. To the extent weeks of separation pay received by the Employee, whether in the form of a lump-sum payment or as salary continuation, exceed the actual number of weeks the Employee is absent from the Company following the Covered Termination (the "Excess Weeks"), the Employee shall promptly repay the Company for such Excess Weeks of separation pay.

Withholding

Separation pay and benefits provided under this Plan will be subject to any legally required or authorized withholdings.

Benefits Not Assignable

Payments and benefits under the Plan are not assignable or subject to alienation since they are not vested and are solely for the support and maintenance of the Employee. Likewise, such payments and benefits shall not be subject to attachment by creditors or through legal process against the Company, the Plan Administrator or any Employee.

Disqualification From Eligibility For Benefits

Notwithstanding the provisions of any other section of this Plan, separation pay and benefits under this Plan will not be paid or will be discontinued if the Employee is determined by the Plan Administrator (1) to have engaged in Misconduct at any time while employed by the Company, or (2) to have violated any of the representations or obligations undertaken by the Employee by executing such documents as the Company may require, including the separation

agreement required by clause 4 of Part III of the Plan, in order for the Employee to be eligible for benefits hereunder. For purposes of this provision, "Misconduct" means: fraud, misappropriation, embezzlement, criminal conduct that is materially and demonstrably injurious to the Company, or other conduct that is materially and demonstrably injurious to the Company.

Reduction of Certain Payments

1. For purposes of this Part IV: (a) a "Payment" shall mean any payment, benefit or distribution in the nature of compensation to or for the benefit of an Employee, whether paid or payable pursuant to this Plan or otherwise; (b) "Plan Payment" shall mean a Payment paid or payable pursuant to this Plan; (c) "Present Value" shall mean such value determined in accordance with Sections 280G(b)(2)(A)(ii) and 280G(d)(4) of the Code; and (d) "Reduced Amount" shall mean an amount expressed as a Present Value that maximizes the aggregate Present Value of Plan Payments without causing any Payment to be nondeductible by the Company because of Section 280G of the Code.

2. Anything in the Plan to the contrary notwithstanding, in the event KPMG or such other nationally recognized certified public accounting firm as shall be designated by the Company other than the Company's auditors (the "Accounting Firm") shall determine that receipt of all Payments would subject an Employee to tax under Section 4999 of the Code, the aggregate Plan Payments shall be reduced (but not below zero) to meet the definition of Reduced Amount.

3. If the Accounting Firm determines that aggregate Plan Payments to an Employee should be reduced to the Reduced Amount, the Company shall promptly give the Employee notice to that effect and a copy of the detailed calculation thereof, and the Employee may then elect, in his or her sole discretion, which and how much of the Plan Payments shall be eliminated or reduced (as long as after such election the Present Value of the aggregate Plan Payments equals the Reduced Amount), and shall advise the Company in writing of his or her election within ten days of his or her receipt of notice. If no such election is made by the Employee within such ten day period, the Company may elect which of such Plan Payments shall be eliminated or reduced (as long as after such election the Present Value of the aggregate Plan Payments equals the Reduced Amount) and shall notify the Employee promptly of such election. All determinations made by the Accounting Firm under this Section shall be binding upon the Company and the Employee and shall be made within 60 days of a termination of employment of the Employee. As promptly as practicable following such determination, the Company shall pay to or distribute for the benefit of the Employee such Plan Payments as are then due to the Employee under this Plan and shall promptly pay to or distribute for the benefit of the Employee in the future such Plan Payments as become due to the Employee under this Plan.

4. As a result of the uncertainty in the application of Section 4999 of the Code at the time of the initial determination by the Accounting Firm hereunder, it is possible that amounts will have been paid or distributed by the Company to or for the benefit of an Employee pursuant to this Plan which should not have been so paid or distributed ("Overpayment") or that additional amounts which will have not been paid or distributed by the Company to or for the benefit of an Employee pursuant to this Plan could have been so paid or distributed ("Underpayment"), in each case, consistent with the calculation of the Reduced Amount hereunder. In the event that

the Accounting Firm, based upon the assertion of a deficiency by the Internal Revenue Service against either the Company or the Employee which the Accounting Firm believes has a high probability of success determines that an Overpayment has been made, any such Overpayment paid or distributed by the Company to or for the benefit of the Employee shall be treated for all purposes as a loan to the Employee which the Employee shall repay to the Company together with interest at the applicable federal rate provided for in Section 7872(f)(2) of the Code; provided, however, that no such loan shall be deemed to have been made and no amount shall be payable by the Employee to the Company if and to the extent such deemed loan and payment would not either reduce the amount on which the Employee is subject to tax under Section 1 and Section 4999 of the Code or generate a refund of such taxes. In the event that the Accounting Firm, based upon controlling precedent or substantial authority, determines that an Underpayment has occurred, any such Underpayment shall be promptly paid by the Company to or for the benefit of the Employee together with interest at the applicable federal rate provided for in Section 7872(f)(2) of the Code.

5. All fees and expenses of the Accounting Firm in implementing the provisions of the preceding clauses 1 through 4 shall be borne by the Company.

## PART V ADMINISTRATION, CLAIMS AND GENERAL INFORMATION

Plan Type and Plan Year

This is a separation pay and benefits plan. The Plan year is the calendar year. The Plan Sponsor's identification number for tax reporting purposes is 05-0341324.

Nature of Benefits; Rights to Payments and Benefits Unsecured

The separation pay and benefits and costs of the Plan are payable by the Company out of its general assets, with the exception of the Employees' portion of the premiums or costs for continued benefit coverage for which the Employees will be responsible. The right of an eligible Employee to receive payments or benefits under the Plan shall be only that of an unsecured creditor against the assets of the Company and payments and benefits under the Plan shall be made solely from the assets of the Company. No eligible Employee shall have any right to any specific assets of the Company by virtue of the Plan.

Plan Administration

The general administration of the Plan herein set forth and the responsibility for carrying out its provisions shall be vested in the Plan Administrator. Prior to the Effective Date, the Plan Administrator shall be the "administrator" within the meaning of Section 3(16) of ERISA and shall have all the responsibilities and duties contained therein. From and after the Effective Date, the "administrator" within the meaning of Section 3(16) of ERISA shall be the Bank of America Corporation Corporate Benefits Committee and shall have all the responsibilities and duties contained therein. For the two year period following the Effective Date, the Plan shall be administered in a manner consistent with its administration by FleetBoston as in effect immediately prior to the Effective Date.

The Plan Administrator shall have the authority to appoint and delegate its responsibilities under the Plan and to designate other persons (the "Designee" or "Designees") to carry out any of its responsibilities under the Plan.

The Plan Administrator and/or its Designee shall have such discretionary powers as are necessary to discharge his, her or its duties, including but not limited to, discretionary interpretation and construction of the Plan, and the determination of all questions of eligibility, participation and benefits and all other related or incidental matters. The Plan Administrator's (and/or its Designee's) decision will be binding on the participant, the participant's spouse or other dependent or beneficiary and all other interested parties, subject to review or correction only to the extent that such a decision, determination or construction is shown by clear and convincing evidence to be arbitrary and capricious.

The Plan Administrator and/or its Designee may adopt rules and regulations of uniform applicability in his/her interpretation and implementation of the Plan.

In order for the Employee to be eligible for separation pay and benefits under the Plan, the Plan Administrator and/or its Designee shall require each Employee to execute (and not revoke), the separation agreement required by clause 4 of Part III of the Plan and to provide proof of any information that the Plan Administrator finds necessary or desirable for the proper administration of the Plan.

Agent for Legal Process

Legal process may be served on the Plan Administrator as follows:

Plan Administrator
FleetBoston Separation Pay and Benefits Plan
FleetBoston Financial Corporation
1 Federal Street, MA DE 10306R
Boston, MA 02110
Attention: Mauro A. Cieri

Effect on Other Plans

This Plan has no effect respecting the rights of any Employee under any other Employee benefit plan offered by the Company or its Subsidiaries, including but not limited to any pension or profit sharing, medical, dental, hospitalization, life insurance, accidental death and dismemberment, bonus, incentive compensation, stock option, 401(k) plan, or vacation pay plan. Employee rights under those plans are governed solely by their terms, and Employees should review those plans to ascertain their rights under them. In particular, an Employee's receipt of separation pay and benefits under this Plan does not change the date of his or her termination of employment for purposes of any other plan.

Integration with Other Pay or Benefits

The separation pay and benefits provided for in the Plan are the maximum benefits that the Company will pay, subject to the following provisions. To the extent that the WARN Act

requires the Company to make a payment (e.g., a payment in lieu of notice) of any kind to an Employee because of that Employee's involuntary termination due to a layoff, reduction in force, plant or facility closing, sale of business, or similar event, the Company shall have the right to reduce the separation pay and benefits otherwise provided under this Plan by an amount equivalent to any money the Employee receives pursuant to, or in satisfaction of, the obligations under the WARN Act.

If any federal, state or local law (to the extent not preempted by ERISA), including without limitation, worker's compensation laws (and excluding applicable state or federal laws regarding jury duty or active military service) or any Company policy, benefit or practice, including, without limitation, disability benefits or vacation pay (excluding vacation accrued but unused prior to an Employee's Separation Date) either provides or requires the Company to provide an Employee with income in place of the Employee's salary or vacation pay accruing after the Employee's Separation Date, then the separation pay and benefits to which the Employee would have been entitled under the Plan shall be reduced by the amount of such replacement pay or such post-Separation Date vacation pay received by the Employee.

Employees who, during any part of the period for which separation pay and benefits are payable under this Plan, are on leave due to jury duty or active military service shall receive pay and benefits in compliance with applicable law.

Notwithstanding any provision herein to the contrary, ERISA shall preempt any and all state laws relating to the Plan.

Claims Denial Procedure

Any claim for benefits under the Plan must be submitted in writing to the Administrator.

If a claim for benefits under the Plan is denied in whole or in part, the claimant (or his or her authorized representative) will be notified by the Administrator within 90 days of the date the claim is delivered to the Administrator, unless special circumstances require an extension of time for processing the claim, in which case the claimant will be provided written notification, prior to the termination of the initial 90-day period, of the special circumstances requiring an extension and the date (not to exceed a period of an additional 90 days) by which the Plan expects to render a final decision. The notification will be written in understandable language and will state (1) specific reasons for denial of the claim, (2) specific references to any Plan provision on which the denial is based, (3) a description (if appropriate) of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary, and (4) an explanation of the Plan's review procedure and the time limits applicable to such procedures, including the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review. A claim that is not acted upon within 90 days may be deemed by the claimant to have been denied.

Review of Claim Denials

Within 60 days after a claim has been denied, or deemed denied, the claimant or his or her authorized representative may make a request for a full and fair review by submitting to the Administrator a written statement (1) requesting a review of the denial of the claim, (2) setting

forth all of the grounds upon which the request for review is based and any facts in support thereof, and (3) setting forth any issue or comments which the claimant deems relevant to the claim. The claimant or his or her authorized representative, shall have, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits and may submit comments, documents, records and other information relating to the claim in writing. The review shall take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Administrator shall make a decision on review within 60 days after the receipt of the claimant's request for review, unless the Administrator determines that special circumstances require an extension of time for processing a review is required, in which case the claimant will be notified and a decision will be made within 120 days of receipt of the request for review. If the Administrator determines that an extension of time is required, written notice shall be furnished to the claimant prior to the termination of the initial 60-day period which shall indicate the special circumstances requiring the extension and the date by which the Plan expects to render a final decision. The decision will be in writing and in understandable language. The decision shall set forth (1) specific reasons for the denial of the claim, (2) specific references to any plan provision on which the benefit determination is based, (3) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits, and (4) a statement describing any voluntary appeal procedures offered by the Plan and the claimant's right to obtain information about such procedures and a statement of the claimant's right to bring an action under section 502(a) of ERISA. The decision of the Administrator on review shall be final and conclusive upon all persons unless it is shown by clear and convincing evidence to be arbitrary and capricious.

The claimant may pursue a grievance in a federal court if he or she is improperly denied any right or remedy to which he or she is entitled under the Claim Review Procedure. No legal action may be brought to recover benefits allegedly due under the Plan unless a claimant has exhausted the Claim Review Procedure set forth herein; and in no event may a claimant commence such a legal action more than one year from the date of the claim denial.

Employee Rights under ERISA

As a participant in the Plan, the Employee is entitled to certain rights and protections under ERISA. ERISA provides that all Plan participants shall be entitled to:

1. Examine, without charge, at the Administrator's office, all Plan documents including the Plan annual report.

2. Obtain copies of these documents and other Plan information upon written request to the Administrator. The Administrator may make a reasonable charge for the copies, except copies of the Plan annual report.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries," have a duty to do so prudently and in the interest of Plan participants.

Neither the Company nor any other person may discriminate against an Employee in any way to prevent him/her from obtaining benefits or exercising rights under ERISA.

If a claim for benefits is denied in whole or in part, the Employee must receive a written explanation of the reasons for the denial. He/she has the right to have the Administrator review and reconsider the claim.

Under ERISA, there are steps the Employee can take to enforce the above rights. For instance, if he/she requests materials from the Administrator and does not receive them within 30 days, a grievance may be filed in a federal court.

In such a case, the court may require the Administrator to provide the materials and pay the Employee up to $110 a day until they are received, unless they were not sent due to reasons beyond the Administrator's control. If the Employee has a claim for benefits which is denied or not processed, in whole or in part, a grievance may be pursued in a federal court after the Employee has exhausted his/her appeal under the Plan. If the Employee is discriminated against for asserting his/her rights, he/she may seek assistance from the U.S. Department of Labor, or may pursue a grievance in federal court.

The court will decide who should pay the court costs and legal fees. If the Employee is successful, the court may order the other party to pay these costs and fees. If the Employee should lose, the court may order the Employee to pay these costs and fees if, for example, it finds the Employee did not have sufficient grounds for the claim.

If there are any questions about the Plan, an Employee should contact the Administrator. If there are any questions about this statement or about Employee rights under ERISA, please contact the nearest office of Pension and Welfare Benefits, U.S. Department of Labor listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

<u>Amendment and Termination</u>

The Company reserves the right to amend, modify or terminate the Plan at any time and from time to time by a written instrument signed by a duly authorized officer of the Company. Notwithstanding the foregoing, during the two-year period after the Effective Date, the Plan, including the Exhibits hereto, may not be terminated or amended in any manner that would adversely affect the Employees covered by the Plan. No amendment, suspension or termination shall give the Company the right to recover any amount paid to an Employee prior to the date of such action or to cause the reduction, cessation or discontinuance of separation pay or benefits to any person or persons under the Plan already receiving or entitled to receive separation pay or benefits hereunder. No vested rights are provided under the Plan.

Legal Fees

If an Employee submits a claim to the Plan Administrator or institutes legal action in order to obtain or enforce, or is required to defend in any legal action the validity or enforceability of, any right or benefit provided by this Plan, the Company shall reimburse the Employee for all reasonable costs and expenses relating to such claim or legal action, including reasonable attorney's fees and expenses incurred by such Employee, provided that the Employee is the prevailing party on at least one material issue in any such claim or legal action. The Company's obligations under this paragraph shall survive the termination of this Plan. The reimbursement shall be made as soon as practicable following the resolution of such claim or legal action, regardless of whether such judgment or order is subsequently reversed on appeal or in a collateral proceeding, to the extent that the Company receives reasonable written evidence of such fees and expenses.

Successors

The Plan shall be binding upon and shall inure to the benefit of the Employees, their heirs and legal representatives, and the Company and its successors. The term "successor" shall mean any person, firm, corporation or other business entity that, at any time, whether by merger, acquisition or otherwise, acquires all or substantially all of the stock, assets or business of the Company. This Plan shall bind any successor of the Company, its assets or its businesses (whether direct or indirect, by purchase, merger, consolidation or otherwise). When used herein, the term "FleetBoston" shall mean FleetBoston Financial Corporation as in existence immediately prior to the Effective Date.

Employment Status

This Plan does not constitute a contract of employment or impose on the Company any obligation to retain the Employee, to change the status of the Employee's employment, or to change the Company's policies regarding termination of employment.

Validity and Severability

The invalidity or unenforceability of any provision of the Plan shall not affect the validity or enforceability of any other provision of the Plan, which shall remain in full force and effect, and any prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

Number and Gender

To the extent appropriate in the context, each term used in this Plan in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.

Headings and Captions

Headings and captions in this Plan are inserted for convenience of reference only and the Plan is not to be construed by the interpretation thereof.

**As amended and restated on March 29, 2004 to be effective as of the Effective Date**

FLEETBOSTON FINANCIAL CORPORATION

By: H. Jay Sarles
(print)

(signature)

Title: Vice Chairman/Chief Administrative Officer

# EXHIBIT A

Ineligible Employees

- Employees who became employees of FleetBoston as a result of the consummation of the transactions contemplated by the Agreement and Plan of Merger by and among FleetBoston Financial Corporation and Progress Financial Corporation, dated as of August 27, 2003

Non-Participating Subsidiaries

- Robertson Stephens Group, Inc.

# EXHIBIT B

## Job Transition Support Policy

All Employees eligible for separation pay and benefits under the Plan will have the opportunity to participate in Job Transition Services including Basic Outplacement Services and the "Different Directions" Program.

### Basic Outplacement Services

1. All Non-Exempt Employees and Exempt Employees with an annualized Base Pay of less than $50,000 will have access to a 2-day career transition workshop provided by a professional outplacement vendor with career development expertise, a completed resume, and 2-months of telephone counseling and access to the vendor's job-search web-site.

2. Exempt Employees with Base Pay of $50,000.00 or more will have access to in-office services provided by a professional outplacement vendor with career development expertise. Exempt Employees with Base Pay of $50,000.00 to $99,999.99 will have access to up to 6 months of such in-office services; Exempt Employees with Base Pay between $100,000.00 and $149,999.99 will have access to up to 12 months of such in-office services; Exempt Employees with Base Pay between $150,000.00 and $199,999.99 will have access to up to 24 months of such in-office services; Exempt Employees with Base Pay $200,000.00 and above will have access to such office services for an unlimited time period; provided, that access to such services shall cease immediately upon the Employee's acceptance of a job. To determine a Part-Time Exempt Employee's annualized Base Pay for purposes of determining the Part-Time Employee's level of Basic Outplacement Services only, the Company shall divide the Part-Time Employee's Week's Salary by the Part-Time Employee's regular weekly schedule of hours as of his or her Separation Date as recorded on the Company's Human Resources system and multiply that number by 2080 (40 x 52).

3. To ensure consistency, services will be provided by the same vendor(s) in all of the Company's locations.

### "Different Directions" Program

The Different Directions Program is available to all Employees at all salary levels who are eligible upon a Covered Termination to receive separation pay and benefits under the Plan. The "Different Directions" program allows Employees to participate in an internship with a company outside the financial services industry, a not-for-profit agency, or a community service organization for a maximum of 20 hours per week, for up to 12 consecutive weeks (no more than 240 hours), at a rate of pay determined by the Company, which pay is in addition to, and shall not be offset by, any separation pay and benefits under the Plan.