**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **DAVID H. STENMARK,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No. 05-312 ML** |
| | : | |
| **BANK OF AMERICA CORPORATION,** | : | |
| **as successor and assignee of** | : | |
| **FLEETBOSTON FINANCIAL** | : | |
| **CORPORATION, SEPARATION PAY** | : | |
| **AND BENEFITS PLAN OF** | : | |
| **FLEETBOSTON FINANCIAL** | : | |
| **CORPORATION AND** | : | |
| **PARTICIPATING SUBSIDIARIES, and** | : | |
| **MAURO A. CIERI, in his capacity as** | : | |
| **Plan Administrator,** | : | |
| **Defendants** | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS COUNTS V AND VI OF THE COMPLAINT**

Now comes the Plaintiff, David H. Stenmark, in the above-cited matter pursuant to LR Civ 7(b)(1) and does hereby object to Defendants' Motion to Dismiss Counts V and VI of the Complaint, and as grounds therefore and in support thereof relies on his Memorandum of Law filed simultaneously herewith.

**WHEREFORE,** Plaintiff prays that Defendants' Motion to Dismiss Counts V and VI of the Complaint be denied.

**PLAINTIFF,**
By his attorneys,
**SINAPI, FORMISANO &COMPANY, LTD.**

**Dated: April 17, 2006**

**Richard A. Sinapi, Esq. (R.I. Bar No. 2977)**
**100 Midway Place, Suite 1**
**Cranston, RI 02920**
**Telephone: (401) 944-9690**
**Fax: (401) 943-9040**

## CERTIFICATION

**TO: Mark A. Pogue, Esq.**
**Edwards Angell Palmer & Dodge, LLP**
**2800 Financial Plaza**
**Providence, RI 02903**

I hereby certify that a true copy of the within was faxed and mailed, postage prepaid, to the above-named counsel of record this 17 day of **April, 2006.**

Jessica A. Pareja
______________________

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **DAVID H. STENMARK,**<br>**Plaintiff**<br><br>**v.**<br><br>**BANK OF AMERICA CORPORATION, as successor and assignee of FLEETBOSTON FINANCIAL CORPORATION, SEPARATION PAY AND BENEFITS PLAN OF FLEETBOSTON FINANCIAL CORPORATION AND PARTICIPATING SUBSIDIARIES, and MAURO A. CIERI, in his capacity as Plan Administrator,**<br>**Defendants** | : | **C.A. No. 05-312 ML** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS V AND VI OF THE COMPLAINT**

## I. INTRODUCTION

This is an action brought by the Plaintiff seeking declaratory, injunctive, and other equitable relief, compensatory and punitive damages, attorney's fees, and litigation expenses, and other remedies against the Defendants for violations of various provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001-1461 ("ERISA"), arising out of the wrongful denial and deprivation of benefits, failure to automatically provide notice and furnish required benefit plan information, and failure to furnish benefit plan information upon request, as well as common law claims for fraud and negligent misrepresentation.

The Defendants in this action have filed a motion to dismiss Count Five alleging a claim for fraud and Count Six alleging a claim for negligent misrepresentation on the grounds of ERISA preemption. For the reasons discussed in detail below, insofar as Plaintiff has pled more than sufficient facts to establish viable claims for fraud and misrepresentation, the basis and remedy

for which are either totally separate from the existence or application of any ERISA plan or have merely a "tenuous, remote or peripheral connection with a covered benefit plan," Counts Five and Six of the Complaint are not preempted by ERISA; and, therefore, Defendants' motion to dismiss must be denied.

## II. SUMMARY

In the case at bar, Plaintiff claims Defendant Bank of America ("BOA"), and its predecessor, FleetBoston Financial Corporation ("Fleet"), by and through their respective agents, made repeated representations over several years that he would be compensated for his long term, extraordinary and loyal service should his job be eliminated due to a future merger or acquisition. In reliance thereon, Plaintiff actually worked two jobs for a period of time, without additional compensation, and continued his employment with BOA, foregoing other possible opportunities. Nevertheless, he was eventually terminated by BOA, without any compensation, bonus, salary continuation or severance of any kind. Plaintiff has alleged a claim for fraud and, in the alternative, a claim for negligent misrepresentation seeking compensatory and punitive damages for detrimental reliance on the undisputedly false representations made by these Defendants.

According to the Defendants, Plaintiff was neither a participant nor beneficiary of any ERISA severance plan. Plaintiff's foregoing common law claims do not rely on the existence or interpretation of an ERISA plan, do not measure damages based on an ERISA plan, and do not seek any ERISA benefits or the reinstatement of ERISA benefits. Plaintiff fraud and misrepresentation claims seek relief under state laws of general applicability, the enforcement of which in this context does not implicate the core concern of ERISA preemption, which is the uniform enforcement, administration and interpretation of ERISA plans. Nor do the Plaintiff's claims or the relief he seeks place these causes of action into one of the categories of state law

Congress intended to preempt. Congress did not enact ERISA preemption to immunize individuals from liability against fraud for misrepresentations made on which innocent third parties rely to their detriment. Insofar as, at best, there is remote or peripheral connection with a covered benefit plant, Counts Five and Six of the Complaint are not preempted by ERISA.

## III. MATERIAL FACTS

**Employment History and Performance**

Plaintiff is a sixty-three (63) year old male, former Senior Project Manager and Regional Planner in the Fleet Global Workplace ("Facilities division"), who was responsible for project management in Rhode Island at the time of his separation from BOA on or about June 2, 2004. Comp. at ¶9. Plaintiff had a nearly forty (40) year work relationship with BOA and its predecessors. *Id.* Throughout the course of his foregoing employment with BOA and its predecessors, Plaintiff was regarded as a valued, productive and loyal employee, as evidenced, in part, by excellent employment reviews, promotions, and merit bonus and salary increases. *Id.* at ¶11. Indeed, in the performance review conducted in March of 2004, just prior to his termination, he was rated as an "Outstanding Performer." *Id.*

**Background to Dispute and Termination**

Plaintiff had been employed by BankBoston when it was acquired by Fleet on or about March, 2000, and he was retained by Fleet as a Senior Project Manager in the Fleet Global Division. *Id.* at ¶10. On or about April 1, 2004, Fleet merged with BOA, and the Plaintiff was retained as an employee of BOA in the same capacity. *Id.* When Fleet bought BankBoston, one of the staff reduction efforts resulted in the termination of 100 or so employees in the Facilities division, whose jobs included the management of the (former BankBoston) buildings, to match the Fleet model. *Id.* at ¶12. These employees were given a severance package determined by their length of service with a maximum of 86 weeks pay to be paid in a lump sum or paid in bi-

weekly payments through the term of the severance allotment. *Id.* Their former jobs/responsibilities were bid to outside property management companies with the stipulation that the terminated employees would be given a job with the successful bidder at the same pay that they were making at Fleet. *Id.* That is to say, even though they were reemployed by an outsource provider, the employees were entitled to a severance because they had been terminated by Fleet due to a merger.

Fleet conveyed to all other employees, including Plaintiff, that this same policy would be written into any and all future acquisitions/mergers of Fleet in the future, with the exception that the future maximum allotment would be the Fleet standard of one (1) year. *Id.* at ¶13. When the BOA acquisition was announced, this policy was again stated with a nine (9) week bonus to be added across the board. *Id.* Mr. Chad Gifford ("Gifford"), Chairman of the Board of Fleet, went to great lengths, on more than a few occasions, to acknowledge that employees on all levels were directly responsible for the ongoing success of Fleet. *Id.* at ¶14. Fleet management, including Gifford, promised to all Fleet employees that, should Fleet go through any future acquisitions/mergers, they would be treated in the same manner regarding this severance policy. *Id.* Fleet continuously reinforced this promise and constantly asked more of its employees in terms of cutting costs, working harder and longer and generally striving to enhance the bank's bottom line. *Id.* at ¶15. In more than a few cases, employees were asked to perform two jobs or more to keep the staff levels as low as possible. *Id.*

During the latter part of 2002 through the latter part of 2003, Plaintiff was asked to fill the vacant position of "Regional Planner" for Rhode Island while continuing to perform his job of "Senior Project Manager" of Rhode Island. *Id.* at ¶16. The Regional Planner position had been open for about two (2) years prior to his taking it on and had been filled by an outside project management/architectural firm. *Id.* Plaintiff was asked to "temporarily" fill the position,

without additional compensation, because Fleet did not want to incur added expense at this time to hold down costs to present a better financial picture for the bank. *Id.* at ¶17. This was the practice of Fleet to demonstrate savings, particularly when a contemplated merger or acquisition was pending or being negotiated. *Id.*

Fleet represented to Plaintiff that his extraordinary efforts would be rewarded in the future. *Id.* at ¶18. In particular, on numerous occasions, Fleet continued to emphasize to Plaintiff and others that the Fleet severance package would remain intact and continuous through any future mergers/acquisitions. *Id.*

Immediately prior to Plaintiff's termination on June 2, 2004, he was notified by BOA that he was scheduled for a job interview with a representative of Trammell Crow Company (TCC) to be held in Boston. *Id.* at ¶19. Plaintiff was advised that TCC was the successful bidder for the management of the BOA properties and projects acquired by BOA as a result of the Fleet acquisition, and that it would be fulfilling the Facilities division functions previously performed by employees terminated or to be terminated by BOA, such as the Plaintiff. *Id.* BOA representatives and agents advised Plaintiff in more than one communication that Plaintiff was required to attend this interview and accept any job offer or forfeit any rights to severance benefits. *Id.* at ¶20. TCC subsequently made a job offer to Plaintiff on May 28, 2004, which he accepted. *Id.* at ¶21. Plaintiff was denied severance benefits under the Defendants' ERISA covered plan, even though he was terminated by BOA due to a merger, because his functions where being outsourced by BOA, and TCC offered him employment. *Id.* at ¶¶21-22. Plaintiff was not provided any compensation, one-time bonus, salary continuation or severance of any kind for his long term, loyal, and extraordinary services, despite repeated, express past representations of the Defendants to the contrary.

**Claims for Fraud and Negligent Misrepresentation**

Plaintiff alleges in Count Five that Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described therein, knowingly made false representations to the Plaintiff, upon which Plaintiff relied to his detriment, thereby committing fraud; or, in the alternative, under Count Six, that Defendants' negligently made false representations to the Plaintiff, upon which Plaintiff relied to his detriment. *Id.* at ¶¶68-69. Specifically, Plaintiff contends BOA misrepresented that he would be compensated and rewarded for his long term, extraordinary, and loyal service in the event his job was eliminated due to a subsequent acquisition or merger. *Id.* at ¶¶12-15. In reliance thereon, Plaintiff actually worked two jobs on behalf of BOA for a period of time, without additional compensation, and continued his employment with BOA, foregoing other possible opportunities, until he was terminated by BOA on June 2, 2004. *Id.* at ¶¶16-18. Plaintiff was terminated by BOA without any compensation, bonus, salary continuation or severance of any kind—whether pursuant to an ERISA plan or otherwise. The remedy which Plaintiff seeks for his fraud and negligent misrepresentation claims is compensatory and punitive damages for his foregoing detrimental reliance. He does not seek pursuant to those causes of action any ERISA benefits or the reinstatement of ERISA benefits or any other remedy based on the existence of an ERISA plan. Such remedies are sought under alternative theories of recovery pled in Counts One and Two.

## IV. ARGUMENT

**Insofar As Plaintiff Has Pled More Than Sufficient Facts To Establish Viable Claims For Fraud And Negligent Misrepresentation, The Basis And Remedy For Which Are Either Totally Separate From The Existence Or Application Of Any ERISA Plan Or Have Merely A Tenuous, Remote Or Peripheral Connection With A Covered Benefit Plan, Counts Five And Six Of The Complaint Are Not Preempted By ERISA; And, Therefore, Defendants' Motion To Dismiss Must Be Denied.**

**A. Standard of Review**

When considering a motion under Fed.R.Civ.P. 12(b)(6), a court must accept all facts pleaded as true and draw all inferences from those facts in a light most favorable to the non-moving party. *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976). A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt from the pleadings that the party opposing the motion can prove no set of facts which would support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While a court is not required to *assume* facts, *it must draw reasonable inferences in making the foregoing determination.* The Plaintiff is not legally obligated to allege any particular facts or elements in order to establish a claim for relief under the Federal Rules.[1]

**B. ERISA Preemption Doctrine**

**Scope and Limitations of ERISA Preemption**

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). In the context of ERISA, "the term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law." *Id.* § 514(c)(1). To relate to a benefit plan, a law only need have "a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). ERISA's preemption provisions "are deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987).

Nevertheless, certain state laws are not subject to ERISA preemption. *See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003)(noting state laws regulating insurance, banking, and securities are "saved from pre-emption" by ERISA). In particular, the Supreme

---

[1] *See Moore v. Clarke*, 821 F.2d 518, 519 (8th Cir. 1987)("whole spirit" of Federal Rules "is to discourage the pleading of evidence"). "When a federal court reviews the sufficiency of a complaint . . . [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Court has expressly held that preemption does not occur if the state law "has only a tenuous, remote, or peripheral connection with covered plans." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995)(internal quotation marks and citations omitted); *accord Boston Children's Heart Foundation, Inc. v. Nadal-Ginard*, 73 F.3d 429, 439 (1st Cir. 1996); *Rosario-Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d 120, 123 (1st Cir.1995). Such is normally the case where laws of general applicability are involved, such as the fraud and negligent misrepresentation claims alleged by the Plaintiff in the case at bar. *Id.* As Senior First Circuit Judge Bownes has noted, "all state misrepresentation claims [are not swept] into the ERISA corner merely because an employee benefit plan exists." *Golas v. HomeView Inc.*, 106 F.3d 1, 6 (1st Cir. 1997)(Bownes, S.J., concurring in result); *see also Morstein v. National Ins. Servs., Inc.*, 93 F.3d 715, 723-24 (11th Cir.1996)( *en banc* ), *cert. denied*, 519 U.S. 1092 (1997)(Congress did not enact ERISA to immunize insurance agents from personal liability for fraudulent misrepresentation regarding ERISA plans).

For example, a state-law action only peripherally affects a plan where a plaintiff refers to a clause in the benefit plan summary to support his employment discrimination claim, or where a plaintiff simply makes "reference to specific, ascertainable damages" by citing a life insurance contract. *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir.2001); *accord Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003). In deciding whether state-law claims are preempted by ERISA, courts have focused on the remedy sought by the plaintiffs. *See Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 806 (6th Cir.1999); *accord Marks*, 342 F.3d at 453. The inquiry into whether a state law "relates to" an ERISA plan or is merely "tenuous, remote, or peripheral" requires a court to look at the facts of the particular case. *See Boston Children's Heart Found.*, 73 F.3d at 439-40; *Rosario-Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d at 125 n. 2.

**Core Concern of ERISA Preemption and Categories of Preempted Claims**

The Supreme Court has clearly annunciated that the core concern implicated by ERISA preemption was the goal of providing a uniform body of benefits law, and thereby eliminating the administrative and financial burdens of employers complying with potentially conflicting directives among the States or between the States and the Federal Government, and preventing the potential for conflict in substantive law, which could require the tailoring of plans to the peculiarities of the law of each jurisdiction. *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 142 (1990). As noted by Senior Judge Bownes in *Golas,* in discussing the sweep of ERISA pre-emption in the *Travelers* case, the Supreme Court pointed to three categories of state laws that Congress intended to preempt: **first**, "state laws that mandate[ ] employee benefit structures or their administration," 514 U.S. at 658; **second**, "state laws providing alternate enforcement mechanisms," *id.;* **third**, state laws that bind plan administrators to a "particular choice and thus function as a regulation of an ERISA plan itself," *id.* 6660. *Golas,* 106 F.3d at 7 (Bownes, S.J., concurring in result). In *Travelers,* the Court ultimately concluded that none of these state-law categories were implicated, and held that the New York statutory insurance surcharges at issue had only "an indirect economic effect on choices made by insurance buyers, including ERISA plans" and, therefore, there was no preemption. 514 U.S. at 659-662.

**C. ERISA Preemption Does Not Apply in this Case.**

**Claims Are Not Within Categories of State Law Congress Intended to Preempt Nor Do They Implicate Core Concerns of ERISA Preemption**

There is no preemption under categories 1 and 3 as noted by the Court in *Travelers* and discussed above, as the claims at issue do not involve state laws that purport to mandate the content, existence or mode of administration of an employee benefits plan nor do they involve direct or indirect state regulation of an ERISA covered employee benefits plan. Nor does

category 2 apply, since, as stated previously above, the only remedy sought by Plaintiff under his fraud and misrepresentation claims are compensatory and punitive damages for detrimental reliance; those causes of action do not seek benefits or the reinstatement of benefits or any other remedy based on the existence of an ERISA plan—unlike his Count Two *Varity* claim for breach of fiduciary duty.[2] *Lion's Volunteer Blind Indus.*, 195 F.3d at 806 (courts have focused on remedy sought in applying ERISA preemption); *accord Marks*, 342 F.3d at 453.

Plaintiff's fraud and negligent misrepresentation claims do not rely on the existence or interpretation of an ERISA plan, do not measure damages based on an ERISA plan, and do not seek any ERISA benefits or the reinstatement of ERISA benefits. No reference to the Defendants' ERISA severance plan or any other ERISA severance plan is required—other than the Defendants' judicial admission that none applies to Plaintiff. Plaintiff is merely seeking relief under state laws of general applicability, the enforcement of which in this context does not implicate the core concern of ERISA preemption, which is the uniform enforcement, administration and interpretation of ERISA plans. *Ingersoll-Rand Co.*, 498 U.S. at 142.

---

[2] Count Two of the Complaint seeks relief for breach of fiduciary duty under ERISA due to a denial of benefits in reliance on the doctrine annunciated in *Varity Corporation v. Howe*, 516 U.S. 489 (1996). In *Varity*, a group of beneficiaries claimed that a Plan Administrator, through trickery, led them to withdraw from an ERISA plan and forfeit their benefits. The beneficiary plaintiffs in that case sought, among other things, an order that in essence would reinstate each of them as a participant in the employer's ERISA plan. *Id.* at 492. The Supreme Court affirmed the lower court ruling entering judgment in the employee's favor. In the case at bar, the Plaintiff alleges, *inter alia*, that he was misled by trickery as to what his severance benefits rights were and would be, and, like the beneficiaries in *Varity*, he is entitled to receive the benefits as represented to him, notwithstanding what he otherwise would have been legally entitled to under the plan in existence as of the date of his termination. Plaintiff has expressly alleged that the Defendants knowingly, intentionally, and/or negligently deceived Plaintiff, a plan beneficiary, in order to save the Defendants money at the Plaintiff's expense, and thereby failed to discharge their fiduciary duties under the plan solely in the interests of the Plaintiff and in accordance with 29 U.S.C. §1104, and, therefore violated ERISA-imposed fiduciary obligations, Comp. at ¶¶35, 48. *Varity*, 516 U.S. at 506; 29 U.S.C. §§1101-1114. While liability under the Plaintiff's common law fraud and negligent misrepresentation counts may rely on some facts similar to those relevant to the Count Two ERISA breach of fiduciary duty claim under *Varity*, ***the relief sought is totally different.*** The relief sought under Count Two is reinstatement and payment of severance benefits under an ERISA covered plan. Accordingly, there is no preemption nor duplication.

**Claims Have Merely a Tenuous, Remote, or Peripheral Relation to ERISA Covered Plan**

Plaintiff claims Defendants BOA and its predecessor, Fleet, made repeated representations over several years that he would be compensated for his long term, extraordinary and loyal service should his job be eliminated due to a future merger or acquisition. In reliance thereon, Plaintiff actually worked two jobs for a period of time, without additional compensation, and continued his employment with BOA, foregoing other possible opportunities. Nevertheless, he was eventually terminated by BOA, without any compensation, bonus, salary continuation or severance of any kind—whether ERISA or non-ERISA compensation.[3] Plaintiff has alleged a claim for fraud and, in the alternative, a claim for negligent misrepresentation seeking compensatory and punitive damages for detrimental reliance on the undisputedly false representations made by these Defendants.[4]

---

[3] Not all compensation or benefits paid to an employee are covered by ERISA. Where an employer pays occasional, temporary or *ad hoc* benefits from its general assets, there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits; therefore, such benefits are not covered by ERISA. *See California Hosp. Ass'n v. Henning,* 770 F.2d 856, 859 (9th Cir.1985) (discussing policy behind exclusion of ordinary vacation plans from ERISA's reach); *see also McMahon v. Digital Equipment Corp.*, 162 F.3d 28, 36 (1st Cir. 1998); 29 C.F.R. § 2510.3-1(b)(2).

[4] Accordingly, the case of *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 794 (1st Cir. 1995) relied upon by the Defendants is inapposite, since the court's inquiry does not have to be directed to the plan to ascertain damages. The Defendants' express representations as to what the Plaintiff would receive may be regarded as the appropriate measure of damages, and/or may be merely viewed as a "reference to specific, ascertainable damages" caused by the fraud and misrepresentation—that is establishing that the Plaintiff has sustained harm. *Wright,* 262 F.3d at 615; *accord Marks,* 342 F.3d at 453. Plaintiff's measure of damages under applicable tort law may then be established by expert testimony opining as to the fair compensation due for working two jobs without additional compensation and/or the fair and appropriate *ad hoc* severance customary in the locality and industry for employees with Plaintiff's longevity, skill level and record of service (*i.e.,* common rule of thumb calculation of two weeks severance for every year of service). *Carlo* is also factually inapposite because the misrepresentations at issue predate the purported date the plan was last amended as discussed above in the text. Finally, *Carlo* is of questionable precedential value in any event in light of the limitations on ERISA preemption imposed by the Supreme Court's decision in *Travelers* and subsequent decisions both within and without this Circuit, as noted by Senior Judge Bownes well reasoned and supported concurrence in *Golas,* 106 F.3d at 6-10 (Bownes, S.J., concurring in result), *and cases cited therein*; *see also Boston Children's Heart Found.,* 73 F.3d at 439-40.

To put it another way, Plaintiff would not have worked two jobs while being compensated for only one and he would not have waited around for four years so that he could be terminated without compensation as a consequence of an inevitable future merger. Comp. at ¶¶12-18. Particularly in light of his age, Plaintiff would have engaged in a thorough, and if necessary, protracted job search, to find alternative, comparable employment ***with some job security***, and he would have retired from BOA's predecessor, Fleet, and collected the immediate and future benefits to which he would have been entitled as a result. This is, of course, precisely what Fleet did not want: mass defections of key employees due to fear of job loss in a future merger; hence, Fleet's motive for the misrepresentations (both orally and on the intranet and elsewhere) which led Plaintiff to remain with Fleet, and perform far above and beyond what was required. Accordingly, the Defendants received the full benefit of the "bargain"—Plaintiff remained as a valuable and loyal employee and continued to perform above and beyond the call of duty. However, Defendants have now failed or refused to perform their part of bargain—Plaintiff was terminated by BOA without any compensation, bonus, salary continuation or severance of any kind. The mere fact that the failure to provide the promised compensation, *includes* failure to provide any ERISA covered benefits does not result in a preemption of Plaintiff's claims for fraud and negligent misrepresentation. This is so based on well-settled case law that, merely because "reference to specific, ascertainable damages" may include the failure to provide an ERISA covered benefit, does not result in the preemption of state law claims.[5]

---

[5] In *Wright*, 262 F.3d at 610, the plaintiff cited to denial of the right to receive an ERISA covered benefit as one of the components of damage in her claim for race and sex discrimination and retaliation. *Id.* at 615. Since, in the case at bar, the lack of receipt of the ERISA benefit was only a "reference to specific, ascertainable damages" she sustained due to discrimination, her claim for relief was not preempted by ERISA. In *Marks,* 342 F.3d at 444, the court held that even though the plaintiff's fraud and misrepresentation claims related to an ERISA plan, insofar as the plaintiff alleged that the defendant induced him to not exercise rights under an ERISA plan, ERISA preemption did not apply to that portion of plaintiff's claims alleging misrepresentations which *induced plaintiff to accept employment* as an initial matter. *Id.* at 453. Similarly in the case at bar, Plaintiff is alleging misrepresentations, which

Moreover, to do so would also lead to the absurd result in this case that a state law claim based on the failure to provide the promised compensation, would be preempted by ERISA, even though Defendants claim there is no ERISA benefit to which Plaintiff is entitled in this case. In other words, how could the uniform administration and interpretation of employee benefits law be implicated if there is no ERISA benefit. This is particularly true, where, as here, the conduct at issue (*i.e.*, fraud and misrepresentation) predated the ERISA plan that Defendants' claim is not applicable (March 29, 2004 plan amendment date per Exhibit A attached to Defendants' memorandum of law in support of its motion to dismiss). *See Boston Children's Heart Found.*, 73 F.3d at 439-40 (noting misconduct at issue predated formal adoption of ERISA plan in holding preemption did not apply to breach of fiduciary duty claim).

Defendants cannot have their cake and eat it to. They cannot contend in defense of Counts One and Two that there is no ERISA severance plan to which Plaintiff is entitled, and also claim that the *non-existence of such a plan* is also a defense to fraud and misrepresentation under Counts Five and Six under some type of ERISA preemption immunity.[6]

In conclusion, a defendant is not immunized from compensatory and/or punitive damages for fraud and/or negligent misrepresentation under state law merely because the material, false representations on which a plaintiff detrimentally relies, may be construed so as to in some

---

*induced Plaintiff to continue his employment* and work two jobs, without additional compensation. As in *Marks*, the damages sought by the Plaintiff in the case at bar are not based on what he would have received under an ERISA covered plan.

[6] Plaintiff would emphasize that in light of the Supreme Court's decision limiting the scope of ERISA preemption in *Travelers*, 514 U.S. at 645, subsequent case law both within this Circuit, *see, e.g., Golas*, 106 F.3d at 6-10 (Bownes, S.J., concurring in result), *Boston Children's Heart Found.*, 73 F.3d at 439-40, and without this Circuit cited herein, *Marks*, 342 F.3d at 444; *Wright*, 262 F.3d at 610; *Morstein*, 93 F.3d at 715, and/or discussed by Senior Judge Bowne in is concurrence in *Golas*, the "cogent arguments against preemption in misrepresentation claims" noted by the court in *Carlo*, 49 F.3d at 794, would appear to have added legal support at this time, ***particularly at this stage of the proceedings where no discovery has been done relative to the nature, form, time frame, and/or extent of the misrepresentations and/or the measure or basis of the damages sustained by the Plaintiff as a result.***

remote and peripheral way relate, in part, to the purported non-existence of an ERISA covered plan, since neither the uniform administration nor interpretation of employee benefits plans are implicated in such a context. *See Golas,* 106 F.3d at 6; (Bownes, S.J., concurring in result); *Morstein,* 93 F.3d at 723-24.

## V. CONCLUSION

**WHEREFORE,** for all the foregoing reasons, Plaintiff prays that Defendants' Motion to Dismiss Counts V and VI of the Complaint be denied.

**PLAINTIFF,**
By his attorneys,
**SINAPI, FORMISANO &COMPANY, LTD.**

**Dated: April 17, 2006**

**Richard A. Sinapi, Esq. (R.I. Bar No. 2977)**
**100 Midway Place, Suite 1**
**Cranston, RI 02920**
**Telephone: (401) 944-9690**
**Fax: (401) 943-9040**

## CERTIFICATION

**TO: Mark A. Pogue, Esq.**
**Edwards Angell Palmer & Dodge, LLP**
**2800 Financial Plaza**
**Providence, RI 02903**

I hereby certify that a true copy of the within was faxed and mailed, postage prepaid, to the above-named counsel of record this 17 day of **April, 2006.**